**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-2427-WJM-KLM

NORTHGLENN GUNTHER TOODY'S, LLC, a Colorado limited liability company,

    Plaintiff,

v.

HQ8-10410-10450 MELODY LANE, LLC, a Delaware limited liability company,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

In this action, Plaintiff Northglenn Gunther Toody's, LLC ("Gunther Toody's"), sues Defendant HQ8-10410-10450 Melody Lane, LLC ("Melody Lane") for breach of a restrictive covenant in a shopping center lease. (*See* ECF No. 8.)  Currently before the Court is the preliminary injunction portion of Gunther Toody's Motion for Temporary Restraining Order and Preliminary Injunction ("TRO/PI Motion" or "Motion").  (ECF No. 2.)[1]

After reviewing the TRO/PI Motion, Melody Lane's response (ECF No. 26), and Gunther Toody's reply (ECF No. 34), the Court finds that an evidentiary hearing will not assist the Court to resolve the Motion.  For the reasons explained below, the Motion is denied.

**I. BACKGROUND**

Melody Lane owns a shopping center on 104th Avenue in Northglenn, Colorado,

---

[1] The Court previously denied the TRO portion of this motion. (ECF No. 12.)

known as the "Northglenn Marketplace." (ECF No. 8 ¶ 11.) Melody Lane has leased a portion of the Northglenn Marketplace to Gunther Toody's, which operates a restaurant named Gunther Toody's on the leased premises. (*Id.* ¶¶ 12–14.) The restaurant is designed to evoke a 1950s American roadside diner with features such as vehicles from that era on display, employee uniforms that resemble restaurant uniforms of the 1950s, a jukebox with 1950s music, checkered flooring, and unique fonts used in signage and on its menus. (ECF No. 2-7; ECF No. 26-5 at 2.)

In June 2016, Melody Lane executed a lease agreement with non-party Tayseer Zuiater, a franchisee of the International House of Pancakes ("IHOP") system. (ECF No. 26-2.) That lease permits Zuiater to operate "a full-service sit-down restaurant serving breakfast food and related beverages as the primary menu item, which is identified as selling 40% or greater of gross sales towards breakfast food and related beverages." (*Id.* § 1.17.) The specific premises leased to Zuiater comprise a building previously leased to a different restaurant. (ECF No. 8 ¶ 15.) This building is very close to Gunther Toody's—just across one of Northglenn Marketplace's internal streets. (ECF No. 1-5.)

On June 17, 2016, the City of Northglenn announced that an IHOP restaurant would be coming to the Northglenn Marketplace. (ECF No. 26-3.) A little over a month later (July 20, 2016), Gunther Toody's wrote to Melody Lane, asserting that Melody Lane's lease with Zuiater violated a restrictive covenant in Melody Lane's lease with Gunther Toody's. (*See* ECF No. 26-4 at 1.) That restrictive covenant states that "Landlord shall not permit any other portions of the Shopping Center to be leased or sold for usage as a diner similar in concept to the operation conducted from the Leased

Premises by Tenant."  ("Restrictive Covenant," ECF No. 2-2 at 32 (art. XXV, ¶ J).)

Gunther Toody's claims that an IHOP restaurant is a "diner similar in concept" to the Gunther Toody's restaurant because both:

- are allegedly "diner-style restaurant[s] that offer[] relatively inexpensive food with an emphasis on breakfast items such as pancakes, omelets, waffles, and French toast, which are served throughout the day";

- do not have a drive-through;

- serve food "cooked to order";

- "have table service, and uniformed servers that wear blue"; and

- "serve traditional American dishes such as cheeseburgers, fries, salads, steak and mashed potatoes, club sandwiches, BLTs, ice cream sundaes and other simple fare."

(ECF No. 2 at 3–4.)  The Court notes, however, that one aspect of these assertions is contradicted by Gunther Toody's own evidence.  Specifically, Gunther Toody's submitted a copy of its menu, which states that breakfast items are served from "6am to 11am."  (ECF No. 2-7 at 5.)  Thus, the argumentative assertion that "breakfast items . . . are served throughout the day" appears to be inaccurate.

On September 27, 2016, Gunther Toody's filed the TRO/PI Motion currently at issue.  Gunther Toody's submitted an affidavit from Glenn Heelan, manager of a limited liability company that is itself the manager of Gunther Toody's.  (ECF No. 2-15 ¶ 1.)  Heelan claims he has "observed construction crews at the proposed IHOP location."  (*Id.* ¶ 4.)  He further claims that Gunther Toody's will "suffer harm in the loss of customers and [loss of] goodwill of returning customers" if the IHOP is allowed to open.

(*Id.* ¶ 5.)

By way of declaration, Zuiater confirms that he is in possession of the leased premises and that his contractors are remodeling the former restaurant into an IHOP. (ECF No. 26-6 ¶¶ 3, 6.) He states his intent to open the IHOP "within the next two (2) months so that we can conduct business in time for the holiday season." (*Id.* ¶ 8.) Thus, assuming that an IHOP is a diner similar in concept to the Gunther Toody's restaurant, Melody Lane has breached the Restrictive Covenant and Gunther Toody's faces imminent harm from that breach. Melody Lane asserts, however, that an IHOP restaurant is *not* a diner similar in concept to the Gunther Toody's restaurant, and therefore Melody Lane's actions did not breach the Restrictive Covenant. (ECF No. 26 at 6–10.)

## II. PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an extraordinary remedy; accordingly, the right to relief must be clear and unequivocal. *See, e.g.*, *Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010). To meet this burden, a party seeking a preliminary injunction must show: (1) a likelihood of success on the merits, (2) a threat of irreparable harm, which (3) outweighs any harm to the non-moving party, and that (4) the injunction would not adversely affect the public interest. *See, e.g.*, *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012).

Although this inquiry is, on its face, relatively straightforward, there are a variety of exceptions. If the injunction will (1) alter the status quo, (2) mandate action by the defendant, or (3) afford the movant all the relief that it could recover at the conclusion of a full trial on the merits, the movant must meet a heightened burden. *See O Centro*

*Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir.2004) (*en banc*).  Specifically, the proposed injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course" and "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."  *Id.*

### III.  ANALYSIS

The Court finds that it need only address the likelihood of success element.  The Court further finds that the heightened injunctive standard applies here.  Gunther Toody's seeks an injunction requiring Melody Lane to somehow dispossess Zuiater of the IHOP-to-be.  Whether this alters the status quo is debatable, turning on what one considers to be the status quo (before or after Melody Lane leased to Zuiater).  There is no debate, however, that the injunction would mandate an affirmative act by Melody Lane.  It would also afford Gunther Toody's all the relief it needs under its current theory of the case.  Accordingly, Gunther Toody's must make a strong showing of likelihood of success.  *O Centro*, 389 F.3d at 975.  Gunther Toody's has not made that showing.

The Court assumes without deciding that "diner" means what Gunther Toody's appears to assert, namely, a table service restaurant with a broad array of breakfast, lunch, and dinner offerings, most of which are perceived as American cuisine (as opposed to, *e.g.*, Mexican, Thai, etc.).  Gunther Toody's arguments make clear, however, that it interprets "diner similar in concept to the operation conducted from the Leased Premises by Tenant" as a long-form name simply for "diner."  (*See, e.g.*, ECF

5

No. 2 at 4 (summarizing materials retrieved from the Internet where IHOP and Denny's restaurants have been referred to as "diners"); ECF No. 34 at 3 (implying that any form of diner would violate the Restrictive Covenant).)

Colorado courts strive to avoid any interpretation that would render contractual language meaningless or redundant.  *See, e.g.*, *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 (Colo. 2009); *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984).  Thus, without more, the Court cannot agree that the "similar in concept" clause has no independent force—that it does not modify "diner" in some meaningful way.

The Court acknowledges the affidavit of Kim Hopfenspirger, who founded the Gunther Toody's restaurant chain and who negotiated the lease containing the Restrictive Covenant.  (ECF No. 34-3 ¶¶ 1–2.)  Hopfenspirger asserts that he "always intended the [Restrictive Covenant] to exclude other family style diner concept restaurants with similar menus to Gunther Toody's such as Perkins, IHOP, Denny's and Village Inn."  (*Id.* ¶ 4.)  Assuming without deciding that Hopfenspirger's subjective intent, expressed after the fact, is relevant to interpreting the Restrictive Covenant, the Court finds that it only repeats a position the Court has already found disfavored under Colorado law, *i.e.*, that "diner similar in concept . . ." means nothing more than "diner." Stated differently, neither Hopfenspirger nor Gunther Toody's points this Court to any example of a "diner" that is *not* "similar in concept" to the Gunther Toody's restaurant at issue here.  But the Court is not convinced on the materials before it that "similar in concept" can be interpreted in a manner rendering it superfluous.

Gunther Toody's additionally asserts that nothing in its lease with Melody Lane

6

would prohibit it from converting the Gunther Toody's restaurant to an IHOP, a Denny's, or a Village Inn.  (ECF No. 34 at 5.)  This is so, Gunther Toody's says, because its lease allows it to operate a "diner-style, full-service restaurant," with the only restriction being that it may not sell popcorn.  (*Id.* (quoting ECF No. 2-2 at 17).)  Thus, the argument goes, the Restrictive Covenant must necessarily apply to any form of restaurant that Gunther Toody's *could* operate consistent with its lease, *i.e.*, any form of diner.  (*Id.*)

Again, on this record, Gunther Toody's has not demonstrated a strong likelihood that this argument will succeed.  The relevant language of the Restrictive Covenant is "diner similar in concept to *the operation conducted from the Leased Premises by Tenant*" (emphasis added).  Gunther Toody's current argument does not overcome the most natural reading of this language, namely, that it refers to whatever operation Gunther Toody's has most recently conducted on the premises, not any hypothetical operation it could conduct.[2]  And in any event, Gunther Toody's attempt to interpret the Restrictive Covenant in light of the operations Gunther Toody's might conduct on the premises is yet another argument that essentially writes "similar in concept" out of the lease.

Having thoroughly examined the parties' competing expert opinions regarding similarity of concept (or not) between the Gunther Toody's restaurant and a typical

---

[2] This of course raises interesting questions about what would happen if Gunther Toody's indeed tried to become, say, a Denny's restaurant.  The Court assumes that such a dramatic change would likely need Melody Lane's approval (*see* ECF No. 2-2 at 11, 14, 17), and that any such approval would likely violate the restrictive covenant in Zuiater's lease (*see* ECF No. 26-2 § 54).  But the issue is not presented here and so the Court need not explore it further.

IHOP restaurant (ECF Nos. 2-14, 26-5, 34-2), the Court finds further support that Gunther Toody's success cannot be deemed "likely" on this record. The Court emphasizes that it is not prejudging the ultimate merits of the parties' positions. At this preliminary stage, however, the Court finds more persuasive the conclusions of Melody Lane's expert, Richard Weil, that the "concept" at issue in the Restrictive Covenant is specifically the concept of a 1950s-style diner, not the general concept of a table service restaurant with a broad array of American breakfast, lunch, and dinner offerings. (*See* ECF No. 26-5 at 8–9.) Moreover, the "concept" of an IHOP is an all-day-breakfast diner. (*Id.* at 9.)[3]

Accordingly, Gunther Toody's has not made a strong showing of likelihood of success in proving that the forthcoming IHOP restaurant is similar in concept to the Gunther Toody's restaurant.[4]

## IV.  CONCLUSION

For the reasons set forth above, the preliminary injunction portion of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 2) is DENIED.

---

[3] Weil's report is not without its flaws. For example, his informal survey of ten unspecified individuals' perceptions of IHOP and Gunther Toody's restaurants is certainly open to challenge. (*See id.*) But the Court has serious difficulty crediting the opposing views of Gunther Toody's expert, Mike Stevens, given his willingness to assert that "IHOP was established in 1958 and is therefore a 50s diner." (ECF No. 34-2 at 3.)

[4] Because the Court is not issuing injunctive relief in favor of Gunther Toody's, it does not at this time need to resolve whether Zuiater is a necessary party to this action. (*See* ECF No. 29; ECF No. 34 at 1–2.) The Court considers that an open question to be resolved if and when it is raised by a party, or when circumstances otherwise force the Court to consider the effect of its rulings on Zuiater.

Dated this 4th day of November, 2016.

BY THE COURT:

_____
William J. Martinez
United States District Judge